OPINION
{¶ 1} This appeal stems from injuries sustained by Danny Hoop when a negligent driver struck his motorcycle. Following the accident, the tortfeasor's liability insurer paid Mr. Hoop the policy limit of $12,500. As this amount failed to compensate Mr. Hoop adequately for his injuries, he and his wife, Cheryl Hoop, filed a complaint seeking a declaratory judgment regarding the availability of underinsured motorist ("UIM") benefits from their insurance carrier, Nationwide Mutual Fire Insurance Company ("Nationwide"), under their motorcycle policy and an umbrella policy. The Hoops also sought declaratory judgment regarding the availability of UIM benefits under a business auto policy that Mr. Hoop's employer, the Jervis B. Webb Company, maintained through the Pacific Employers Insurance Company ("Pacific"). Nationwide later filed a cross-claim for declaratory judgment, asking the trial court to find that the Pacific policy provided the Hoops with UIM coverage on a primary basis.
 {¶ 2} Nationwide and Pacific ultimately moved for summary judgment on the Hoops' complaint against them. Nationwide also moved for summary judgment on its cross-claim against Pacific. In an October 17, 2002, ruling, the trial court sustained Nationwide's motion for summary judgment, finding that the Hoops had only limited UIM coverage under the motorcycle policy and no such coverage under the umbrella policy. (Doc. #47). Thereafter, on November 18, 2002, the trial court sustained Pacific's motion for summary judgment, finding that the Hoops were not entitled to UIM coverage under Mr. Hoop's employer's business auto policy. In that ruling, the trial court also overruled Nationwide's motion for summary judgment on its cross-claim. (Doc. #49). On December 17, 2002, the Hoops filed a timely appeal from the trial court's entry of summary judgment in favor of Nationwide and Pacific. Ten days later, on December 27, 2002, Nationwide filed a timely appeal from the trial court's entry overruling its motion for summary judgment on its cross-claim against Pacific.[1]
 {¶ 3} On appeal, the Hoops advance two assignments of error. First, they contend that the trial court erred in entering summary judgment in favor of Nationwide. Second, they argue that the trial court erred in entering summary judgment in favor of Pacific. In its cross-appeal, Nationwide asserts that the trial court erred in finding that the Hoops did not qualify for UIM coverage under the Pacific policy. As a means of analysis, we first will review the trial court's entry of summary judgment in favor of Nationwide and against the Hoops. We then will consider the trial court's entry of summary judgment in favor of Pacific and against the Hoops. Finally, we will address the trial court's refusal to enter summary judgment in favor of Nationwide on its cross-claim against Pacific.[2]
 The Hoops' claim under their two Nationwide policies {¶ 4} The record reflects that Mr. Hoop signed a document limiting his UIM coverage under the Nationwide motorcycle policy to $100,000 per person and $300,000 per occurrence and rejecting UIM coverage entirely under the umbrella policy. When ruling on Nationwide's motion for summary judgment, the trial court addressed only one issue: to wit, whether the insurance company's offer of UIM coverage under the motorcycle and umbrella policies was sufficient to satisfy the requirements of the applicable version of R.C. § 3937.18(C). On this issue, the Hoops argued in the trial court that a valid offer of UIM coverage had to meet certain requirements identified by the Ohio Supreme Court in Linko v.Indemnity Ins. Co., 90 Ohio St.3d 445, 2000-Ohio-92.
 {¶ 5} Guided by our decision in Purvis v. Cincinnati Ins. Co., Greene App. No. 2001-CA-104, 2002-Ohio-1803, however, the trial court found that R.C. § 3937.18, as amended by H.B. 261, supersededLinko's requirements regarding a valid offer. Given that Nationwide had met the requirements of H.B. 261, the trial court found a statutory presumption that the insurance company had made a valid offer of UIM coverage. The trial court then found no evidence to overcome that presumption. As a result, it found, as a matter of law, that the Hoops had only limited UIM coverage under their Nationwide motorcycle policy and no UIM coverage under their umbrella policy.
 {¶ 6} On appeal, the Hoops argue that the requirements imposed byLinko survived the amendment of R.C. § 3937.18, and that Nationwide failed to meet those requirements when offering UIM coverage. As a result, the Hoops contend that Nationwide did not make a valid offer of UIM coverage, and that they did not make a valid election to limit UIM coverage under the motorcycle policy to an amount less than their liability coverage and to reject UIM coverage entirely under the umbrella policy.
 {¶ 7} Upon review, we find persuasive the Hoops' argument that the requirements of Linko remain applicable in this case. In Kemper v.Michigan Millers Mutual Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101, the Ohio Supreme Court expressly held that the requirements of Linko, relative to an offer of UIM coverage, are applicable to a policy of insurance written after the enactment of HB 261 and before S.B. 97. On the basis of Kemper, the Ohio Supreme Court then summarily reversed our decision in Purvis, insofar as we had held to the contrary. Purvis v.Cincinnati Ins. Co., 98 Ohio St.3d 1493, 2003-Ohio-1314.
 {¶ 8} The remaining question, which was not addressed by the trial court, is whether Nationwide's offer of UIM coverage satisfied Linko's
requirements. On appeal, Nationwide does not concede that it failed to meet the requirements imposed by the Ohio Supreme Court in that case. (See Nationwide's appellate brief at 10-12). Given that the trial court did not address this issue, we will leave it for resolution in first instance on remand. For present purposes, we sustain the Hoops' first assignment of error and hold that the trial court erred in entering summary judgment in favor of Nationwide on the basis that R.C. §3937.18, as amended by H.B. 261, superseded Linko's requirements regarding a valid offer of UIM coverage.
 The Hoops' claim under the Pacific policy {¶ 9} The trial court determined that the Hoops were not entitled to UIM coverage under the business auto policy maintained by Mr. Hoop's employer, the Jervis B. Webb Company.[3] In reaching this conclusion, the trial court found that Mr. Hoop was not an "insured" under the policy. Although the Pacific policy contains the same definition of an insured that the Ohio Supreme Court found to be ambiguous inScott-Pontzer v. Liberty Mutual Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, the trial court followed our decision in White v. AmericanManufacturers Mutual Ins. Co., Montgomery App. No. 19206,2002-Ohio-4125, and held that a "Drive Other Car" endorsement eliminated the ambiguity and, by its terms, precluded coverage in the present case.
 {¶ 10} On appeal, the Hoops insist that they qualify as insureds under the Pacific policy based on a Scott-Pontzer analysis. In support, they note that a business auto coverage form and a UIM endorsement in the Pacific policy identify the insured as the Jervis B. Webb company. The Hoops argue that the Pacific policy is ambiguous, insofar as it names a corporation as the insured, because a corporation acts only through its employees. Consequently, they reason that employees of the Jervis B. Webb company and their family members should be included in the definition of an insured.
 {¶ 11} Upon review, we find the foregoing argument to be without merit. In Scott-Pontzer, the Ohio Supreme Court reasoned that when the only named insured is a corporate entity, use of the word "you" in the description of who is an insured is ambiguous because "a corporation itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Scott-Pontzer, 85 Ohio St.3d at 664. Thus, the court reasoned that the word "you" when referring to the insured could be construed to include the employees of the corporation, thereby extending coverage to such employees. Id.
 {¶ 12} In the present case, the Pacific policy contains the same ambiguous "you" discussed in Scott-Pontzer. Nevertheless, we have held that the Scott-Pontzer ambiguity is eliminated when a "Drive Other Car" endorsement of a similarly worded policy names specific individuals, rather than just a corporate entity, as insureds. White v. AmericanManufacturers Mut. Ins. Co., Montgomery App. No. 19206, 2002-Ohio-4125. Indeed, when a policy identifies individuals who can drive vehicles and sustain bodily injury, there is no ambiguity, and only the insured individuals listed in the endorsement are entitled to UIM coverage. Id.; see also Grubb v. Michigan Mut. Ins. Co., Montgomery App. No. 19575,2003-Ohio-1558. Although the Hoops argue that White is wrongly decided and urge us to re-examine it, we find no persuasive reason to depart from our recent analysis in that case.
 {¶ 13} Notably, the Pacific policy at issue herein does contain a "Drive Other Car" endorsement. It provides that executive officers or employees of the Jervis B. Webb Company who have a covered automobile for personal use qualify as "insureds" under certain circumstances. As a result, the trial court correctly found no Scott-Pontzer ambiguity, and the Hoops are not entitled to UIM coverage on the basis of any ambiguity in the term "you." Rather, as the trial court recognized, the key inquiry is simply whether either of the Hoops qualifies as an "insured" under the "Drive Other Car" endorsement. In resolving this issue, the trial court noted that Mr. Hoop was an employee of the company and had been furnished with a company car for personal use. The trial court also noted, however, that the "Drive Other Car" endorsement specifically addressed UIM coverage and contained a narrow definition of an insured in that context. In reference to UIM coverage, the endorsement stated:
 {¶ 14} "The following is added to Who is an Insured:
 {¶ 15} "Any individual named in the Schedule and his or her `family members' are `insured' while `occupying' or while a pedestrian when being struck by any `auto' you don't own except:
 {¶ 16} "Any `auto' owned by that individual or by any `family member.'" (See Appellants' brief at Exh. 17, p. 2).
 {¶ 17} After reviewing the "Drive Other Car" endorsement, the trial court reasoned as follows:
 {¶ 18} "Since there is no Scott-Pontzer ambiguity, `you' in [the Drive Other Car endorsement] refers to the Jervis Webb Company as the named insured on the policy. Thus, plaintiff would be covered even if he was occupying or struck by a vehicle not owned by the Jervis Webb Company so long as the vehicle was not owned by plaintiff or his family members. At the time of the accident, plaintiff was driving a motorcycle that he owned. This scenario is clearly within the exception language of the endorsement. Therefore, since plaintiff was driving his own vehicle at the time of the accident, he does not qualify for uninsured/underinsured motorist coverage under the [Pacific] policy." (Doc. #49 at 2).
 {¶ 19} On appeal, the Hoops respond to the trial court's analysis by asserting that UIM coverage is intended to protect persons and not vehicles. (Appellants' brief at 23). As a result, they suggest that the "Drive Other Car" endorsement cannot preclude UIM coverage based on the fact that Mr. Hoop was driving his own motorcycle at the time of his accident. The Hoops also challenge the trial court's finding, based onWhite, that any Scott-Pontzer ambiguity is eliminated when an endorsement names specific individuals as insureds. According to the Hoops, such reasoning "flies in the face of the well-known rule established inScott-Pontzer." (Id.).
 {¶ 20} Upon review, we find the foregoing arguments to be unpersuasive. As noted above, we decline the Hoops' invitation to revisitWhite. Based on our reasoning in that case, we conclude that the inclusion of individual insureds in the "Drive Other Car" endorsement eliminates any ambiguity that otherwise might arise as a result of the Jervis B. Webb Company being the named insured in the Pacific policy.
 {¶ 21} We also find no merit in the Hoops' argument that the "Drive Other Car" endorsement impermissibly precludes coverage based on the fact that Mr. Hoop was operating his own motorcycle at the time of the accident. As noted above, the endorsement contains a "Schedule" that refers to "[a]ny Executive Officer or Employees of the Named Insured furnished with [a] covered auto for personal use." With regard to UIM coverage, the endorsement then states that "[a]ny individual named in the Schedule and his or her `family members' are `insured' while `occupying' or while a pedestrian when struck by any `auto' you don't own except: Any `auto' owned by that individual or by any `family member.'"
 {¶ 22} After reviewing the foregoing policy language, we agree with the trial court's analysis. As an employee of the Jervis B. Webb company who was furnished with a covered auto for personal use, Mr. Hoop unquestionably was among those persons identified in the Schedule. As a result, he and his family members qualify as "insureds" under the "Drive Other Car" endorsement when they are occupying any auto that the Jervis B. Webb company does not own[4] except any auto owned by the Hoops. We find nothing ambiguous about this portion of the Pacific policy. Thus, as the trial court properly noted, Mr. Hoop was not an "insured" for purposes of UIM coverage because he was driving his own motorcycle at the time of his accident. Likewise, Cheryl Hoop cannot be an insured under the endorsement because she was not involved in the accident at all.
 {¶ 23} Although the Hoops insist, with no analysis, that UIM coverage is "designed to protect persons, not vehicles," this assertion does not alter the fact that Mr. Hoop did not qualify as an "insured" at the time of the accident. Even if UIM coverage is intended to protect persons rather than vehicles,[5] the Hoops cite nothing to suggest that such coverage protects persons other than those identified as "insureds" under the applicable policy language. UIM coverage surely is not required to protect all persons at all times in all vehicles, even when they do not qualify as "insureds" under the terms of the policy. Having reviewed the language of the Pacific policy, we agree with the trial court's finding that the Hoops do not qualify as "insureds" under the "Drive Other Car" endorsement.
 {¶ 24} We also find no merit in the Hoops' alternative argument that Mr. Hoop qualifies as an insured under the Pacific policy's "Broad Named Insured" endorsement. That endorsement merely identifies as insureds more than fifty businesses that qualify for business auto coverage. It does not name as insureds any employees of the Jervis B. Webb company. Furthermore, based on the principle we set forth in White, supra, since there is no Scott-Pontzer ambiguity in this case, only those businesses specified in the "Broad Named Insured" endorsement are entitled to coverage, and we do not read the endorsement as implicitly extending coverage to employees such as Mr. Hoop.
 {¶ 25} In their appellate brief, the Hoops do not argue that Mr. Hoop qualifies as an "insured" under any other portion of the Pacific policy. (See Appellants' brief at 12-16). Instead, they next assume that Mr. Hoop qualifies as an insured and argue that no portion of the Pacific policy excludes him from coverage. (Id. at 16-23). Given our resolution of the threshold issue regarding Mr. Hoop's status as an insured, we need not determine whether any exclusion would remove UIM coverage under the facts of the present case. Based on the reasoning set forth above, we conclude that neither of the Hoops qualifies as an insured under the circumstances of Mr. Hoop's motorcycle accident. Therefore, we need not determine whether any policy exclusions would preclude coverage if either of the Hoops did qualify as insureds. Accordingly, we overrule the Hoops' second assignment of error and affirm the trial court's judgment, insofar as it found Pacific entitled to summary judgment on their complaint.
 Nationwide's cross-claim for declaratory judgment {¶ 26} With regard to Nationwide's cross-claim against Pacific, the trial court relied on the analysis discussed above, finding noScott-Pontzer ambiguity in the Pacific policy given the presence of a "Drive Other Car" endorsement covering certain individuals but not the Hoops under the circumstances of the motorcycle accident.
 {¶ 27} On appeal, Nationwide essentially repeats the arguments advanced by the Hoops above. First, Nationwide argues that aScott-Pontzer ambiguity exists in the present case. Second, it suggests that the "Drive Other Car" endorsement does not remove the Scott-Pontzer
ambiguity. Third, it contends that Mr. Hoop qualifies as an insured under the "Drive Other Car" endorsement. Finally, Nationwide argues that Pacific's coverage obligation to the Hoops is primary and not excess.
 {¶ 28} Upon review, we find the foregoing arguments to be unpersuasive. In our analysis of the Hoops' claim under the Pacific policy, supra, we fully addressed and rejected the first two arguments raised by Nationwide. With regard to Nationwide's third argument, we do not agree that Mr. Hoop qualifies as an "insured" under the "Drive Other Car" endorsement. In support of this proposition, Nationwide notes only that Mr. Hoop is included in the endorsement's Schedule because he is an employee of the named insured and is provided with a covered auto for personal use. Nationwide fails to recognize, however, that the Scheduledoes not define who is an insured for purposes of UIM coverage. As fully explained above, Mr. Hoop and his family members qualify as "insureds" under the "Drive Other Car" endorsement when they are occupying any auto that the Jervis B. Webb company does not own except any auto owned by theHoops. Therefore, Mr. Hoop was not an "insured" for purposes of UIM coverage because he was driving his own motorcycle at the time of his accident. Finally, given our determination that Pacific has no UIM coverage obligation in this case, we reject Nationwide's argument that Pacific is obligated to provide such coverage on a primary basis. Accordingly, we overrule Nationwide's cross assignment of error and affirm the trial court's judgment, insofar as it declined to enter summary judgment in favor of Nationwide on its cross-claim against Pacific.
 {¶ 29} Based on the reasoning and citation of authority set forth above, the judgment of the Montgomery County Common Pleas Court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
WOLFF, J., and YOUNG, J., concur.
[1] This appeal was timely under App.R. 4(B)(1), which provides that a notice of appeal may be filed within ten days of the filing of another party's timely notice of appeal. Although no one has raised the issue, we note, however, that a party typically may not appeal from an orderdenying a motion for summary judgment. Nevertheless, a review of the record reveals that nothing remains to be litigated with regard to Nationwide's declaratory judgment action. Therein, Nationwide sought a declaration (1) that Pacific was obligated to provide the Hoops with UIM coverage on a primary basis, and that any UIM coverage provided by Nationwide was excess beyond what Pacific was obligated to provide, and (2) in the alternative, that if both Nationwide and Pacific were obligated to provide UIM coverage on a primary basis, then Nationwide was responsible for only its pro rata share of any settlement, award, or judgment. (Doc. #14). In its November 18, 2002, ruling, the trial court held that the Hoops did not qualify for any UIM coverage under the Pacific policy. As a result, the trial court sustained Pacific's motion for summary judgment on the Hoops' complaint and overruled Nationwide's motion for summary judgment on its declaratory judgment action. InAmerican Modern Home Ins. Co. v. Gagopian, Crawford App. No. 3-02-23, 2003-Ohio-342, the Third District Court of Appeals recently permitted an insurer to appeal from the trial court's denial of its motion for summary judgment on its declaratory judgment action regarding coverage. In so doing, the Third District observed that "the trial court did set forth the rights and responsibilities of the parties in its denial of summary judgment which essentially resolved the complaint for declaratory judgment." Likewise, in the present case the trial court completely resolved the cross-claim for declaratory relief by finding that the Hoops failed to qualify for any UIM benefits under the Pacific policy. As nothing remains to be litigated on that cross-claim, we will treat the trial court's ruling as a final disposition of Nationwide's declaratory judgment action against Pacific.
[2] Underinsured motorist coverage is defined by the statutory law "in effect at the time of contracting or renewal." Ross v. Farmers Ins. Groupof Cos., 82 Ohio St.3d 281, 1998-Ohio-381, at syllabus. In the present case, the parties agree that the coverage issue is controlled by R.C. § 3937.18, as amended by H.B. 261, effective September 3, 1997.
[3] The trial court found, and the parties do not dispute, that Ohio law applies to their coverage dispute.
[4] We agree with the trial court's determination that "[s]ince there is no Scott-Pontzer ambiguity, [the word] `you' in [the Drive Other Car endorsement] refers to the Jervis Webb Company as the named insured on the policy."
[5] In support of this proposition, the Hoops cite Scott-Pontzer, supra, at 664, which in turn cited Martin v. Midwestern Group Ins. Co.,70 Ohio St.3d 478, 1994-Ohio-407, at paragraph one of the syllabus. InMartin, the Ohio Supreme Court reasoned that uninsured motorist coverage is indeed intended to protect persons, not vehicles. As a result, theMartin court held that "[a]n automobile liability insurance policy provision which eliminates uninsured motorist coverage for persons insuredthereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. §3937.18 and is therefore invalid." Id. at paragraph three of the syllabus (Emphasis added). The foregoing proposition is of no benefit to the Hoops. The Martin court held only that "insured" persons cannot be denied UIM coverage based on the vehicle that they were driving at the time of an accident. In the present case, however, the "Drive Other Car" endorsement does not exclude "insureds" on the basis of the car that they were driving. Rather, it defines who qualifies as an "insured" based on the vehicle being driven. Martin does not prohibit parties from defining the insured class based on the vehicle being driven. Cf. Selective Ins.Co. v. Wilson, Muskingum App. No. CT2002-0009, 2002-Ohio-7388 (recognizing the distinction between a policy provision that excludes an insured from coverage and a provision that defines who qualifies as an insured by imposing certain conditions). Parenthetically, we note too that the Ohio Supreme Court's ruling in Martin was based on a version of R.C. § 3937.18 that differs from the one that appears to have been in effect when the Pacific policy was issued to the Jervis B. Webb Company. As amended by H.B. 261, the statute permitted the exclusion of some insureds from coverage based on the vehicle being driven. Given that Mr. Hoop did not even qualify as an "insured" under the circumstances of his accident, however, we need not dwell on this issue, which has not been raised by the parties.